[Cite as *State v. Egbert*, 2015-Ohio-3693.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                          Court of Appeals No. WD-14-065

    Appellee                                          Trial Court No. 13 CR 164

v.

Christopher Egbert                              **DECISION AND JUDGMENT**

    Appellant                                          Decided:  September 11, 2015

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Christopher Egbert, appeals the August 5, 2014 judgment of the
Wood County Court of Common Pleas which, following a jury trial convicting him of
felonious assault, assault, aggravated arson, and arson, sentenced appellant to a total of

14 years of imprisonment. Because we find that the convictions were supported by sufficient evidence and were not against the weight of the evidence, we affirm.

{¶ 2} On April 3, 2013, a five-count indictment was filed charging appellant with two counts of felonious assault, aggravated arson, arson, and having a weapon while under a disability. The charges stemmed from the March 26, 2013 altercations with appellant's wife and another individual and two fires which severely damaged appellant's residence and pole barn. Appellant entered not guilty pleas to the charges.

{¶ 3} The matter proceeded to a jury trial on June 24, 2014, and the following relevant evidence was presented. Appellant's wife, Tiffeny Egbert, testified that on the morning of March 26, 2013, she and appellant left their home in Rising Sun, Sandusky County, Ohio, on a four-wheel ATV and proceeded to the Rollersville Tavern where they each had two drinks. After about one hour, they went to Snuffy's Reloaded Bar on State Route 6 in Wood County, Ohio. At Snuffy's, the two played pool, ate, and drank beer. Egbert testified that she consumed four beers and appellant had six beers. After approximately two hours, Egbert stated that appellant got "angry" and began yelling and using profanity.

{¶ 4} Egbert stated that after being asked to leave they headed to the parking lot where appellant began "pummeling" her. She stated that appellant "bounced" her head off a truck and threw her to the ground. Egbert stated that she was yelling for help and that two men came to her aid. After briefly losing consciousness, Egbert stated that she observed appellant bite one of the men and began walking away.

2.

{¶ 5} Following the attack, Egbert stated that she returned to the bar, got a ride home, and got in her truck to go look for appellant. After about 20 to 30 minutes and no sign of appellant, Egbert returned to find the fire department at her home. Appellant stated that she went by ambulance to the hospital from her home.

{¶ 6} During cross-examination, Egbert acknowledged that the property is jointly owned by her and appellant and that the pole barn contained multiple vehicles including two Harley Davidson motorcycles and a Porsche that was being restored by appellant. Further, appellant was trying to start a lawn care business and there was a tractor in the barn. All of these items were destroyed. Further, the parties' pit bulls that were found and rescued from the home were, according to Egbert, referred to as their "children" by appellant. Egbert explained that they purchased the house and the items in the barn from the proceeds of an accident settlement that she received. Egbert stated that out of the $1.2 million, only $50,000 remained.

{¶ 7} Jody Long and Gary Tyson were the men who aided Egbert on March 26, 2013. Long testified that on that date he was at his friend Tyson's apartment which is adjacent to Snuffy's. Long heard arguing and then a scream. Long stated that he observed appellant chasing Egbert and begin hitting her by a truck. The two then walked outside as appellant was pushing Egbert to the ground. According to Long, appellant then bit Tyson and would not let go until Long struck him twice. After hitting appellant a few more times, they let him up and told him to leave. The two then went back in the

3.

apartment. According to Long, Tyson's face, where he was bit, was turning black and blue. Long stated that Tyson appeared to be in shock.

{¶ 8} Gary Tyson similarly testified about observing appellant striking Egbert. Tyson stated that appellant "latched on to [him] like a grizzly bear and he chomped down on [his] face." Tyson stated that after the bite on his chin his foot got cold and he kept soaking it in hot water. Tyson explained that he had a past history of blood clots but was on medication and had no problems for the past few years. After waiting through the night, Tyson went to the VA Hospital in Ann Arbor (where his surgeon was located) and had surgery to remove a clot from his leg. He stayed in the hospital for five days. Tyson testified regarding the photographs depicting his injuries; they were admitted into evidence.

{¶ 9} Wood County Sheriff's Deputy Dustin Kindle testified that on March 26, 2013, he was driving home when dispatch reported a call of a suspicious person walking in the area of Greensburg Pike and State Route 23, south of Snuffy's. Deputy Kindle located appellant who informed him that he had gotten into an altercation with his wife at the bar and was walking home. Kindle noted a strong odor of alcohol coming from appellant.

{¶ 10} Deputy Kindle stated that he drove appellant home, returned his personal effects that were confiscated during the pat-down, and walked him through the attached garage which contained a Chevrolet Avalanche truck and then proceeded into the house. Kindle stated that they engaged in "friendly" conversation and that appellant remained

4.

respectful. Kindle did not encounter anyone else in the home. After four to five minutes, Deputy Kindle left appellant's residence.

{¶ 11} Deputy Kindle testified that after leaving the house he proceeded west on County Road 1 toward State Route 23 and heading toward home. Kindle stated that his home was approximately eight to 12 miles away. Upon arriving home, Deputy Kindle realized that he mistakenly gave appellant his key fob in addition to appellant's keys. Kindle proceeded back to appellant's home.

{¶ 12} When Deputy Kindle arrived back in the area fire trucks were blocking the State Route 23 and County Road 1 intersection; he observed a fire in the distance. Deputy Kindle estimated that 20 to 24 minutes had elapsed from the time he left appellant's residence to the time he saw the fire trucks.

{¶ 13} Wyatt McGough and Joseph Lash testified that on March 26, 2013, at 8:30-9:00 p.m., they were returning from Fostoria, Ohio, and traveling east on County Road 1 when a vehicle pulled out in front of them from a driveway, overcorrected and then spun out into the trees. They decided to make sure the driver was not hurt and turned around in a driveway and proceeded back to the trees. According to the two, the vehicle drove out of a ditch and passed them at a high rate of speed. The vehicle was a Chevrolet Avalanche and one of the taillights was dangling.

{¶ 14} At that point, on the property they noticed a fire coming from a barn and the home's garage door. After a few minutes they noticed fire coming from the home's windows. They called 9-1-1 and waited for the emergency crews to arrive.

5.

{¶ 15} Rising Sun, Ohio, volunteer firefighters testified regarding their efforts to extinguish the fires on appellant's property. Upon arrival, they observed that the barn was consumed by fire. Due to this, and the fact that people could be trapped, they focused on containing the fire in the home. In searching for trapped victims, they found several pit bulls in the basement and were able to carry them out to safety.

{¶ 16} Appellant and his vehicle were found on Greensburg Pike in Wood County, Ohio, near property owned by appellant. Responding to a call, volunteer firefighter Daniel Corbin arrived on the scene and observed appellant lying in the yard and a pickup truck in a small ravine. Corbin approached the vehicle and noticed that it was still in drive. He stated that he depressed the brake, put the car in park, and removed the keys. Corbin noted that there was a cinder block down next to the gas pedal. Corbin testified regarding the photographs of the vehicle that he took and were admitted into evidence.

{¶ 17} Paramedic Andrew Carter responded to a call of an accident. He met a neighbor out front and she directed him to appellant who was under a blanket. Carter testified that when he removed the blanket he could smell an accelerant and observed that appellant had burns from his med-section down. His right knee was especially affected. Carter stated that the burns were "fairly significant" and were of varying degrees. Appellant also admitted to consuming alcohol and had a strong odor on his breath.

{¶ 18} While Carter was treating appellant, appellant stated that someone had jumped him, put him in the car, and drove him to where he was found. Appellant also stated that it was two individuals. Regarding the burns, appellant stated that at his home

6.

an individual poured gasoline on him, beat him up, and took him to the Greensburg Pike property. Appellant and his vehicle were approximately 200 feet apart. Appellant was taken by helicopter to Toledo for treatment.

{¶ 19} Rosalie Traut testified that she resides on Greensburg Pike and that on the evening of March 26, 2013, she was watching television when she heard the acceleration of appellant's truck. Traut stated that she knew the sound of his truck because, when appellant used to live on the property nearby, he would rev his engine to let her know he was home. Traut looked out the window but did not see his truck.

{¶ 20} Traut testified that while she was looking out the window she saw her neighbor's truck and realized that he was retrieving his dog that had apparently gotten loose. The truck then left. Traut stated that she then heard someone across the road yelling for help. Traut then got a flashlight and her cell phone and headed toward the voice. Traut stated that appellant was complaining about his hip and that he did not get up or move at all. She covered him with a blanket.

{¶ 21} According to Traut, appellant claimed that some men beat him up and that his wife was involved. He stated that they "dumped him off" and "clamped the accelerator" on his vehicle. Traut stated that she did not believe appellant's story.

{¶ 22} On the evening of March 26, 2013, witness Mike Miller was driving on Greensburg Pike when he observed the headlights of a vehicle in a ditch. Miller stopped to check the vehicle and found that it was unoccupied and still running. Miller stated that he then encountered Rosalie Traut and observed appellant laying in the yard and moaning

7.

that his hip was broken.  Miller testified that appellant told him that his wife and her friends caused his injuries.  Appellant also stated that they put a cement block on the gas pedal and set his house on fire.  Miller stated that appellant smelled "funny" but that he could not identify it; possibly ammonia or gasoline.

{¶ 23} Angela Rhoads testified that on March 26, 2013, she was renting the trailer located at appellant's Greensburg Pike property.  Rhoads testified that she had gone to high school with appellant and that they were close friends.  Rhoads spoke to him several times following the incident.  Appellant told her that on the date of the incident, he had been at Snuffy's Bar and that three individuals had started some "stuff" with him.  Appellant stated that he left and began walking; he was driven home by a police officer.  When he arrived home from the bar his wife was not present.  Appellant told Rhoads that three men then came out of the back hallway and forcibly took him from the home in his vehicle.

{¶ 24} Nathan Murphy, of the Wood County sheriff's office, testified that when he first arrived at the Greensburg Pike scene he went to the truck in the ditch.  Murphy stated that the vehicle was damaged on all sides and the driver's side door was severely damaged and would not completely close.

{¶ 25} Deputy Murphy then proceeded to where appellant was laying on the ground, spoke with EMS personnel, and observed his burns.  Murphy took photographs and witness statements and proceeded to the scene of the earlier domestic violence incident in order to obtain witness statements.  At Snuffy's, Murphy interviewed Gary

8.

Tyson and observed a "distinct bite mark" on the right side of his face near his chin. Murphy also interviewed Jody Long at his residence.

{¶ 26} Accident reconstructionist Jody Swoap, from the Wood County Sheriff's Office, testified that he responded to the Greensburg Pike accident scene. Deputy Swoap testified that the damage to appellant's vehicle's taillight was not caused by the accident. Swoap also observed a "large rock" on the driver's side floor next to the gas pedal. Deputy Swoap noticed that, based on the groves in the dirt, the vehicle's tires had continued to spin after coming to rest in the ditch. Deputy Swoap stated that his conclusion was that the vehicle was not occupied when it hit the ditch. Swoap stated that it was an intentional act and that there was no evidence of braking prior to impact. Deputy Swoap agreed that the position of appellant and the injuries he sustained could have occurred from him being pulled under the vehicle. Swoap acknowledged, however, that another individual could have put the block on the gas pedal and that there were "different possibilities" as to how the accident occurred.

{¶ 27} Frank Reitmeier, from the Ohio fire marshal's office conducted an investigation of the fires at appellant's residence. Reitmeier first determined that the fires were separately set due to the fact that the buildings are 35 feet apart and there were no burn marks on the ground in between. Reitmeier noted that there were cuts on some of the furniture in the home and a distinct odor of gasoline.

{¶ 28} Reitmeier determined that the house fire began in the master bedroom and the gasoline pour or burn pattern on the floor continued through the home and the fire

9.

was ignited in the garage. Reitmeier also examined appellant's Chevrolet Avalanche and took a sample from the driver's side floor mat and seat. Reitmeier's photographs were admitted into evidence.

{¶ 29} Reitmeier also opined as to the cause of the Greensburg Pike accident. Reitmeier surmised that appellant exited the vehicle, put the cinder block on the gas pedal, and reached in to put the vehicle in gear. According to Reitmeier, at that point appellant was struck by the vehicle, knocked down and likely run over.

{¶ 30} Reitmeier also testified regarding the nature of appellant's injuries and the fact that his pants were burned and attached to his skin. This fact, combined with the findings that gasoline started the fire at the residence led him to conclude that appellant started the fire.

{¶ 31} Christa Rajendram, employed at the state fire marshal's forensic laboratory, testified that she analyzed 13 items from appellant's home, vehicle, person, and Tiffeny Egbert's clothing and boots for the presence of ignitable fluid. Rajendram testified that her findings revealed the presence of gasoline on appellant's clothing and vehicle and the carpet samples from the home. The finding was also positive for Egbert's boots. Rajendram explained that Egbert's jeans, sweat pants, and a scarf tested positive for a solvent which is found in goop off cleaner. Rajendram admitted that the results could not pinpoint when or where the items came into contact with gasoline. Rajendram's report was admitted into evidence.

10.

**{¶ 32}** The state's final witness, Captain Sean O'Connell of the Sandusky County sheriff's office, testified that he responded to a structure fire call. At the scene, Captain O'Connell spoke with emergency personnel and investigators. Later, Captain O'Connell interviewed Greensburg Pike resident Angela Rhoads and individuals at Snuffy's bar. O'Connell stated that he interviewed appellant at the hospital. According to appellant, he and his wife got into a verbal altercation at Snuffy's which resulted in him leaving the bar. Appellant indicated that on a scale from one to ten, with one being sober and ten being highly intoxicated, he was a nine.

**{¶ 33}** Captain O'Connell stated that appellant recounted how the deputy saw him walking on State Route 23 and drove him home. Once home, appellant stated that he was confronted by three unknown males, hit over the head, and forced into the back seat of his Chevy Avalanche. They drove him to his Greensburg Pike rental property. Appellant recalled jumping from the vehicle as it was moving and he believed that he struck a tree. When asked, appellant denied setting the fire and stated that he did not know who did. Appellant surmised that the gasoline on his clothing was the result of riding the ATV.

**{¶ 34}** Following deliberations, the jury found appellant guilty of assault as to Egbert, felonious assault as to Tyson, aggravated arson and arson. Appellant was sentenced and this appeal followed. Appellant presents two assignments of error for our review:

> 1. The state presented legally insufficient evidence to sustain appellant's convictions for felonious assault, aggravated arson, and arson.

11.

2.  Appellant's conviction fell against the manifest weight of the evidence.

{¶ 35} In appellant's first assignment of error he challenges the sufficiency of the evidence supporting his convictions for felonious assault, aggravated arson and arson. A challenge to a conviction based upon the sufficiency of the evidence to support a conviction presents a question of law on whether the evidence at trial is legally adequate to support a jury verdict on all elements of a crime. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An appellate court does not weigh credibility when reviewing the sufficiency of evidence to support a verdict. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A reviewing court considers whether the evidence at trial "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 36} Appellant's conviction for felonious assault, R.C. 2903.11(A)(1), required that the state prove that appellant caused "serious physical harm" to Tyson. Serious physical harm is defined under R.C. 2901.01(A)(5) as any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

12.

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶ 37} Appellant contends that the state failed to provide sufficient evidence of the harm element. Specifically, appellant argues that there was no evidence provided to support the state's theory that the bite caused a blood clot to form in Tyson's leg.

{¶ 38} We agree with the state that in Ohio courts, human bites have been found to cause serious physical harm. *See State v. Druckemiller*, 6th Dist. Huron No. H-09-013, 2010-Ohio-3070, ¶ 12-14; *State v. Porter*, 2d Dist. Montgomery No. 22923, 2009-Ohio-2547, ¶ 9-24; *State v. Palmer*, 8th Dist. Cuyahoga No. 88003, 2007-Ohio-718, ¶ 12-14. The state further contends that, clot issue aside, the injury caused from the bite itself was sufficient to establish subsections c, d, or e above.

{¶ 39} Viewing the evidence in a light most favorable to the state, we conclude that a jury could have reasonably found that appellant inflicted serious physical harm upon Tyson. During trial, Tyson testified regarding the photographs of his injuries that were admitted into evidence. The photos show extensive swelling and bruising of

13.

Tyson's face and neck. Tyson testified that these injuries were caused as a result of the bite.

{¶ 40} Appellant next contends that his convictions for arson and aggravated arson were not supported by sufficient evidence. Arson, R.C. 2909.03(A)(1), is established where an individual causes or creates, by fire or explosion, a substantial risk of harm to another's property. Aggravated arson, R.C. 2909.02(A)(2), includes the element of an occupied structure. As to these convictions, appellant argues that his identity as the perpetrator was never established.

{¶ 41} Again, we conclude that viewing the evidence in the state's favor, sufficient evidence was presented to find that appellant set the fires in the pole barn and residence. The evidence presented at trial showed that when Deputy Kindle dropped off appellant at his home there was no evidence of other individuals on the property. Witnesses McGough and Lash observed appellant's vehicle pull out of the driveway, go into a ditch, and drive off with its taillight dangling. Appellant's burn injuries as well as the gasoline found on his clothing also support the theory that he started the fire. Finally, appellant gave inconsistent stories as to what had occurred that night.

{¶ 42} Based on the foregoing, we find that appellant's convictions were supported by sufficient evidence. Appellant's first assignment of error is not well-taken.

{¶ 43} In his second assignment of error, appellant argues that his convictions for felonious assault, arson, and aggravated arson were against the manifest weight of the evidence. An appellate court in considering a challenge to a verdict on the grounds that it

14.

is against the manifest weight of the evidence acts as a "thirteenth juror," reviews the entire record, weighs the evidence, and may disagree with the factfinder's conclusions on conflicting testimony. *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541:

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and new trial ordered. *Thompkins* at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶ 44} There is a presumption that the findings of the trier-of-fact are correct. *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. Reversals on the ground that a verdict is against the manifest weight of the evidence are granted "only in the exceptional case in which the evidence weighs heavily against conviction." *Thompkins* at 387.

{¶ 45} Although the evidence presented at trial presented significant issues for jury resolution, the evidence did not weigh heavily against convictions on the three counts. Accordingly, we cannot find that the jury lost its way or created a manifest miscarriage of justice when it found appellant guilty of felonious assault, arson, and

15.

aggravated arson. Therefore, the convictions were not against the manifest weight of the evidence. Appellant's second assignment of error is not well-taken.

{¶ 46} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.        _____
                                           JUDGE

Arlene Singer, J.

                                     _____
Thomas J. Osowik, J.                               JUDGE
CONCUR.

                                     _____
                                           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.